# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| MADISON-TALLULAH EDUCATION CENTER | CIVIL ACTION 18-00234 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION, ET AL. | MAG. JUDGE KAREN L. HAYES |

# RULING

Plaintiff Madison-Tallulah Education Center a/k/a Tallulah Charter School ("TCS") filed this lawsuit against Defendants Louisiana Board of Elementary & Secondary Education ("BESE"), Louisiana Department of Education ("LDE"), and John C. White ("White"), Superintendent of the LDE (referred to collectively as "Defendants"), for purported violations of 42 U.S.C. § 1983 and state law.

Pending before the Court is Defendants' Motion to Dismiss. [Doc. 13]. For the following reasons, Defendants' Motion is GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

TCS is a Louisiana nonprofit corporation domiciled in Madison Parish, Louisiana. Under LA. REV. STAT. § 17:3983, BESE approved TCS to operate a Type 2 public charter school, beginning in July 2013. BESE and TCS entered into a written contract ("the Charter Contract") pertaining to TCS's operation of the school.

Since 2013, TCS has continuously operated the Type 2 charter school in Madison Parish

---

[1] The Court accepts as true the facts contained in TCS' Complaint for purposes of this ruling.

under the initial term of the Charter Contract.  Most of the students attending TCS reside in Madison Parish.

Under LA. REV. STAT. 17:3981, BESE oversees the operation of Type 2 charter schools for the State of Louisiana.  Pursuant to LA. REV. STAT. § 17:3981(5), BESE has rule-making authority to determine policy and direction to LDE with regard to the schools' BESE charters.  Under LA. REV. STAT. § 17:3981(3), BESE must adopt rules for the efficient, effective, and fair undertaking of its duties.

BESE adopted rules contained in the Administrative Code.  Pursuant to LA. ADMIN. CODE § 28:1502A, the Superintendent of LDE makes a recommendation to BESE whether a charter shall be renewed after completion of its initial term of operation.

On or about May 5, 2017, the LDE allegedly received a complaint about potential testing irregularity at TCS during the 2016-17 school year.  The LDE conducted an investigation, which included multiple site visits and interviews in 2017.  TCS contends that the LDE questioned students without providing advanced parental/guardian notice and without first securing parental/guardian authorization.  The LDE also sought and gathered records and other information maintained at TCS.

TCS contends that the LDE did not seek or permit use of the Complaint Procedures under La. Admin. Code 28:3301, to address the May 5, 2017 complaint.  TCS further contends that the LDE and the Superintendent did not use the due process components specified in the Charter School Performance Compact, which is referred to in BESE Bulletin 126, when conducting the investigation.  In particular, the LDE did not issue to TCS a Notice of Concern, Notice of Breach, or like or similar notices.

In a May 17, 2017 notice, the LDE advised parents and guardians of TCS students that their children had been questioned by LDE staff regarding LEAP testing and further advised that the LDE's investigatory visit would not impact the children or their assessment results.

As a result of its investigation, the LDE decided to void 106 LEAP tests administered to students in the 2016-17 school year. The LDE advised TCS of its decision in an October 25, 2017 notice.

On November 24, 2017, TCS provided a written response to the LDE's factual findings. Nevertheless, the LDE decided to void 106 LEAP tests administered in 2016-2017.

The voiding of the LEAP test scores reduced TCS' School Performance Score ("SPS") for the 2016-2017 school year and dropped its Assessment Index Score and student scores in math proficiency. Prior to the voiding of the tests, TCS had a SPS letter grade of "C" for the 2014-2015 and 2015-2016 school years. For the 2016-2017 school year, the LDE assigned an SPS of "F" to TCS.

Under BESE regulations, a Type 2 charter school that has a failing SPS ("F" grade) has no right of renewal of its initial charter contract. According to TCS, Type 2 charter schools with SPS grades higher than F have statutory, regulatory, and contract rights to a recommendation from the State Superintendent for charter renewal and to an affirmative vote by the BESE to authorize renewal of their charters beyond their initial term.

TCS contends that the LDE was "arbitrary, did not consider alternative measures available for measuring student performance for the 106 voided examination results, used criteria not authorized when evaluating and measuring school quality for TCS' SPS scores, and did not take into account the impact of such decision on approximately 430 students served by TCS and the

3

educational alternatives remaining for said students in the event of TCS' closure based on failing SPS scores." [Doc. No. 1, § 36].

TCS further contends that the LDE violated LA. ADMIN. CODE 28:1101 B, C and G and TCS' statutory and contract rights under its Charter Contract, as well as the Louisiana Charter School Performance Compact, by voiding the 106 LEAP test results and calculating TCS's SPS rating "without an actual measure of student performance." [Doc. No. 1, §§ 37-38].

On December 11, 2017, BESE's School Innovation and Turnaround Committee received the LDE's recommendation of non-renewal, allegedly based on TCS'SPS score of "F." The Committee acted in reliance on the LDE's SPS 2016-2017 report on TCS, and without notice to or input from TCS, voted to accept the recommendation of non-renewal.

On December 12, 2017, BESE, acting on the Committee's recommendation, voted to accept the LDE's recommendation of non-renewal without notice to or input from TCS. TCS contends that BESE's decision of non-renewal was not based on a specific recommendation communicated from White to BESE, as purportedly required by state law.

In a January 4, 2018 letter, BESE notified TCS, through the president of the board of Directors, of the non-renewal decision. As a result, TCS will close at the end of the 2017-18 school year and its approximately 430 students will need to attend another school. The other public schools in Madison Parish are also rated as failing.

TCS contends that it did not receive the opportunity to create and implement a corrective action plan, as permitted under LA. ADMIN. CODE 28:1503B(7).

On January 11, 2018, counsel for TCS filed a request for reopening, rehearing, and reconsideration with BESE and the LDE. BESE's Executive Director responded, summarizing

BESE's prior actions and providing 139 pages of assorted records. The letter did not indicate that any further hearing or reconsideration would be given.

On or about February 1, 2018, BESE's Executive Director responded a second time, indicating that there would be no reopening, rehearing, or reconsideration of the December 12, 2017 non-renewal decision. TCS has since received written notification from the LDE that it will begin closure procedures for TCS.

TCS contends that the decision was made without a hearing, without an opportunity for the BESE to receive any evidence from TCS, and without a fair and impartial process.

On February 23, 2018, TCS filed a Complaint in this Court against BESE, the LDE, and White in his official capacity. [Doc. No. 1]. TCS asserts six causes of action as follows:

(1) preliminary and permanent injunctions prohibiting Defendants from "continuing to act under color of state law to encroach upon [TCS'] constitutional due process rights in rendering and implementing a final decision not to renew TCS' charter . . . without . . . [s]atisfying the requirements of the Charter School Performance Compact . . . , [r]requiring [White] to timely issue a recommendation . . . , permitting [White] to act under . . . LAC 28:503B(7) in authorizing a renewal . . . , affording TCS a fair hearing . . . under LSA-R.S. 49:950, 955 and other pertinent sections of the Louisiana Administrative Code . . . , [a]ffording [TCS] a process hearing that meets the basic due process dictates of Fourteenth Amendment to the United States Constitution and Article I, Sec. 2 of the Louisiana Constitution (1974) . . . , [r]equiring the LDE to adhere to the requirements of LAC 28:1101 when determining TCS' performance rating for 2016-2017 . . . , [u]tilizing the complaint procedures required under state regulation LAC 28:3301 in addressing alleged testing irregularities.

(2) The Court should declare that each law, policy, rule, regulation and practice referenced herein that was used to assign a failing SPS rating to TCS [and to deny TCS renewal of its charter], as applied by the defendants, unconstitutionally deprives [TCS] of due process guaranteed under the 14th Amendment of the United States Constitution and under the Louisiana Constitution of 1974.

(3) The Court should declare that December 12, 2017 nonrenewal decision made by the BESE, in the absence of a recommendation of nonrenewal communicated directly by [White], unconstitutionally deprives [TCS] of due process under the law guaranteed under the 14th

Amendment of the United States Constitution and under Article I, Section 2 of the Louisiana Constitution (1974).

(4) The Court should declare that the actions of the BESE's School Innovation and Turnaround Committee meeting on December 11, 2017 and of the BESE on December 12, 2017 in making a final decision to not renew the TCS charter, without advance notice to TCS and without first affording an opportunity to TCS to appear and be heard, to be actions that unconstitutionally deprived [TCS] of due process under the law guaranteed under the 14th Amendment of the United States Constitution and under Article I, Section 2 of the Louisiana Constitution (1974).

(5) The Court should grant declaratory relief recognizing that the LDE, BESE and Superintendent's use of voided high stakes test scores to determine SPS rating was unauthorized and done without use [of] "objective and quantifiable indicators" as required by BESE *Bulletin 126* to determine TCS' SPS rating for the 2016-2017 scholastic year. The Court should further declare that TCS' SPS rating if calculated using objective and quantifiable indicators gained from objective and quantifiable measures of student performance and not voided test results, results in a passing SPS grade for TCS higher than "F," and entitles TCS to a charter renewal beyond its initial charter term.

(6) The Court should grant declaratory relief decreeing that the nonrenewal decision made by the BESE on December 12, 2017 was not final because it was not based on a recommendation of renewal or nonrenewal received from [White], a requirement of State law.

[Doc. No. 1, pp. 13-17]. Thus, TCS asserts claims for breach of contract and other state law-based claims and for violations of its Due Process rights under 42 U.S.C. § 1983.

TCS further requested expedited consideration and prayed for the following:

a)     Issue preliminary and permanent injunctions restraining and enjoining [BESE], the [LDE], [White], their agents, employees, and those acting in concert with them from acting on or making any final decision to not renew the charter contract of TCS and from taking steps to close TCS without first affording TCS due process, and basing any final decision regarding TCS' charter renewal on fair objective and quantifiable indicators required by law;

b)     Declare that TCS' constitutional due process rights were violated;

c)     Declare that the BESE's decision of December 12, 2017 to not renew the

> charter of TCS was not based on a recommendation received from [White] and, therefore, is invalid;
>
> d) Declare that TCS has satisfied the criteria for renewal of its charter contract for an additional renewal term;
>
> e) Awarding to TCS reasonable attorney's fees and damages as provided for by law; and
>
> f) Awarding such other relief as to which plaintiff proves itself justly entitled, including all costs of this proceeding.

[Doc. No. 1, pp. 17-18].

On March 2, 2018, then-presiding Judge Robert G. James held a telephone conference with counsel to discuss the case and scheduling. Counsel for all parties participated. The Court set a hearing for April 16, 2018, at 9:00 a.m. Defendants were instructed to file any motions prior to the hearing.

On March 14, 2018, Defendants filed the instant Motion to Dismiss [Doc. No. 13]. TCS filed a memorandum in opposition to the motion on April 4, 2018. [Doc. No. 16]. On April 10, 2018, with leave of Court, Defendants filed a reply memorandum. [Doc. No. 24].

The matter is now ripe.

## II. LAW AND ANALYSIS

### A. Standard of Review

Defendants' Motion to Dismiss raises arguments that are addressed under Rules 12(b)(1) ad 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action for lack of subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss.,*

*Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Defendants' Eleventh Amendment arguments are properly addressed under Rule 12(b)(1). *United States v. Tex. Tech Univ.*, 171 F.3d 279 (5th Cir. 1999) (treating motion to dismiss on Eleventh Amendment grounds as a 12(b)(1) motion to dismiss).

Additionally, Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. In evaluating a 12(b)(6) motion, the court must accept all "well-pleaded facts" as true, "'viewing them in the light most favorable to the plaintiff,'" and drawing all inferences in its favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12(b)(6) motion is also the proper motion to seek dismissal of parties without the procedural capacity to be sued. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).

### B. Motion to Dismiss

Defendants argue that the Eleventh Amendment bars all claims for relief against them because the actual party in interest is the State of Louisiana. TCS responds that White is not a state agent or sovereign body, the State is not immune from a contract or tort suit under Article XII, § 10(A) of the Louisiana Constitution of 1974, and its Due Process claims may be considered under the *Ex Parte Young* exception.

The Eleventh Amendment and attendant principle of sovereign immunity generally bar

suits against the state and its agencies in federal court unless the state consents to the suit. *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 280 (5th Cir. 2002). It is irrelevant whether the requested relief is injunctive or monetary. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101–02 (1984) ("a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.") (citations omitted); *see also Carpenter v. Miss. Valley State Univ.*, 807 F.Supp.2d 570, 580 (N.D. Miss. 2011) ("This immunity is far reaching. It bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments.").

A plaintiff can escape this rule by suing state officials in their official capacity for prospective injunctive (or declaratory) relief based on a continuing violation of federal law. *See Ex Parte Young*, 209 U.S. 123 (1908). This exception to the Eleventh Amendment is often referred to as the *Ex Parte Young* exception. However, the exception does not save pendant state law claims against state officials in their official capacity. *See Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992); *see also Pennhurst*, 465 U.S. at 104 ("a federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). Nor does it save declaratory or injunctive claims if the plaintiff seeks retroactive relief pursuant to these claims. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (holding that court considering an *Ex parte Young* claim "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of

federal law and seeks relief properly characterized as **prospective**" ) (emphasis added) (quotation omitted); *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (*Ex parte Young* does not apply to suits seeking retroactive relief; it only applies to suits seeking prospective relief because "'[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But . . . deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'") (quoting *Green v. Mansour*, 474 U.S. 64, 68) (1985)).

Finally, the Eleventh Amendment ordinarily allows claims, whether based on federal or state law, against state officials in their individual capacities which seek monetary damages when the individual will be personally liable for the judgment. *Henley v. Simpson*, 527 Fed. App'x 303, 305-06 (5th Cir. 2012) (citing *Hafer v. Melo*, 502 U.S. 21 (1991); *Kentucky v. Graham*, 473 U.S. 159 (1985)). The Court now applies those principles to the parties and claims in this case.

1. **BESE and LDE**

BESE[2] and LDE,[3] as an agent and department of the state, respectively, are entitled to

---

[2] [BESE] is an agency within the executive branch of the state government. La. R.S. 36:4(A)(14); La. R.S. 36:642(B). BESE has the authority to sue and be sued in the courts of Louisiana and to hold and use property in its own name. La. R.S. 17:6(A)(1) & (4). BESE has extensive independent authority, La .R.S. 17:6(A), 17:7 & 17:9, and is concerned about the statewide operation of education in Louisiana. Its operating budget is subject to approval by the state legislature, and its funds come from general appropriations by the legislature from the public treasury. BESE may borrow money. La. R.S. 17:2152. Any judgment rendered against it must be satisfied from the state's coffers after specific approval from the legislature. *See* LA. CONST. ART. XII, § 10(C). The state of Louisiana is the real party in interest in this suit against BESE.

*Kiper v. Louisiana State Bd. of Elementary & Secondary Educ.*, 592 F. Supp. 1343, 1352 (M.D. La. 1984), aff'd sub nom. *Kiper v. La State Bd. of Ele/Sec Ed.*, 778 F.2d 789 (5th Cir. 1985).

[3] The Louisiana Department of Education and the Board of Elementary and Secondary Education, are arms of the state for purposes of sovereign immunity.

Eleventh Amendment immunity from suit absent waiver or abrogation. *See, e.g., Delahoussaye v. New Iberia*, 937 F.2d 144, 148 (5th Cir. 1991); *Richardson v. Southern Univ*., 118 F.3d 450, 456 (5th Cir. 1997); *Jones v. Board of Sup'rs of the Univ. of La. Sys.,* 58 F.Supp.3d 670, 673 (W.D. La. 2014). Contrary to TCS' contentions, Louisiana has not waived its immunity from suit in federal court. LA. CONST. ART. XII § 10; LA. REV. STAT. ANN. § 13:5106; *see also Fairley v. Stalder*, 294 F. App'x 805, 811 (5th Cir. 2008) (holding in a §1983 action that "[t]here is no express consent to suit in Federal Court in section 10, article XII of the Louisiana Constitution"). Thus, BESE and LDE are immune from suit in this Court no matter whether the relief sought is injunctive or monetary, or whether the cause of action is based on federal or state law. To the extent Defendants seek dismissal of all claims against BESE and LDE, the motion is GRANTED and those claims are dismissed WITHOUT PREJUDICE.

### 2. Claims against Superintendent White

Although TCS cannot proceed with claims against BESE and the LDE, it is possible that it may proceed with certain claims against White. The Court thus considers the claims as against White.

---

*See* LA. CONST. ART. VIII, SEC. 2 (Board of Elementary and Secondary Education appoints a superintendent of education who is the administrative head of the Department of Education and who implements the policies of the BESE); *Bd. of Elementary and Secondary Ed. v. Nix*, 347 So.2d 147, 150 (La.1977) (The BESE "is given the constitutional power to determine educational policy for the public schools of the state"). *See also Swindle v. Livingston Parish Sch. Bd*., 655 F.3d 386, 399 (5th Cir.2011) (LDOE and BESE are entitled to sovereign immunity); *Pace v. Bogalusa City Sch. B*d., 403 F.3d 272, 285 (5th Cir.2005) (finding that LDOE and BESE waived sovereign immunity). Accordingly, any claims against LDOE or BESE for monetary damages must be dismissed.

*Williams v. Recovery Sch. Dist*., 859 F. Supp. 2d 824, 832 (E.D. La. 2012)

### a. Breach of Contract and Other State Law Claims

TCS complains that BESE and LDE, through White, the state official named as Defendant in this suit, breached the Charter Contract with it by not adhering to procedures. Breach of contract is a state law claim. Additionally, TCS asserts that White violated certain provisions contained in the Louisiana Revised Statutes and Louisiana Administrative Code. To the extent these claims are brought against White in his official capacity, they must be dismissed because the *Ex Parte Young* exception does not apply to pendant state law claims. *See Pennhurst*, 465 U.S. 89, 104-06 (1984); *see also Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (Ex Parte Young "permit[s] the federal court to vindicate federal rights.").

Thus, to the extent Defendants move the Court to dismiss TCS' state law breach of contract and/or other state law claims, the motion is GRANTED, and those claims against White in his official capacity are DISMISSED WITHOUT PREJUDICE.[4]

### b. Claims for Monetary Damages Against White in his Official Capacity

The Eleventh Amendment bars all claims for monetary relief against the state or its agencies without the state's consent. Because a suit against state officials in their official capacities is akin to a suit against the state itself, Defendants' Motion to Dismiss is GRANTED to the extent they seek dismissal of TCS' claims for monetary damages against White in his capacity based on

---

[4]TCS does not appear to have asserted any breach of contract or other state law claims against White in his individual capacity. The Court notes that, in any event, White, in his individual capacity, was not a party to the contract. *See, e.g. Mathai v. Board of Sup'rs of LSU*, 959 F.Supp.2d 951, 961-62 (E.D. La. 2013 ("Regardless of any contract that plaintiff may have formed with the school, she has not alleged that Dr. Nelson was a party to the contract and thus liable for its breach."); *Bisong v. Univ. of Houston*, 06-1815, 2006 WL 2414410 at *3 (S.D. Tex. Aug. 18, 2006); *Allen v. Tulane Univ.*, No. 92-4070, 1993 WL 459949 at *9 (E.D. La. Nov. 2, 1993) (dismissing breach of employment contract claim against school dean, since he was not party to the contract); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 447 (8th Cir. 1995).

alleged violations of state and federal law. Those claims are DISMISSED WITHOUT PREJUDICE.

### c.  The Eleventh Amendment and Declaratory and Injunctive Relief Sought Against White in his Official Capacity

Defendants also move the Court for dismissal of TCS's claim for injunctive and declaratory relief, contending that, under the *Ex Parte Young* exception, the Eleventh Amendment also bars a plaintiff from seeking declaratory and injunctive relief against state agencies or state officials in their official capacities which is retroactive in effect. *See Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) ("The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and **prospective in effect**.") (emphasis added); *see also Simmang v. Tex. Bd. Of Law Examiners*, 364 F.Supp.2d 874, 886 (W.D. Tex. 2004) (noting that the *Ex Parte Young* exception applies only to suits for prospective injunctive relief).

After careful review of the Complaint in this matter, the Court agrees with Defendants. Although TCS has done a credible job of attempting to characterize the relief sought as prospective and/or as continuing violations, the Court finds that the relief TCS actually seeks is retroactive in nature. All of its complaints related to a completed investigation, completed hearing, and completed vote on the non-renewal of its charter. Accordingly, to the extent Defendants seek dismissal of TCS' claims for declaratory and injunctive relief against White in his official capacity on Eleventh Amendment grounds, the motion is also GRANTED, and those claims are also DISMISSED WITHOUT PREJUDICE.

### d.  Defendants as "Persons" under § 1983

Defendants also move to dismiss TCS' claims against them under § 1983. The Fifth Circuit has indeed held that "State agencies and state officials acting in their official capacity are not 'persons' within the meaning of [§ 1983.]" *Lumpkins v. Office of Cmty. Dev.*, No. 14-31216, 2015 WL 4317700, at *2 (5th Cir. 2015) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)). However, having found that Defendants are immune from suit under the Eleventh Amendment, the Court need not address this remaining, related argument.

## III.   CONCLUSION

Although TCS ostensibly raised federal Due Process claims, this lawsuit, at its base, is a complaint about the State's application (misapplication in TCS' view) of the procedures under applicable statutes, the Charter Contract, the Charter School Performance Compact, and the Administrative Code. Those are the very types of state law issues in which this Court should not intervene under the Eleventh Amendment. Therefore, for the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, and TCS' claims are DISMISSED WITHOUT PREJUDICE.

MONROE, LOUISIANA, this 12th day of April, 2018.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**